## Smethurst *against* Woolston.

The value of the article at or about the time it is to be delivered is the measure of damages in a suit by the vendee against the vendor for a breach of a contract of sale and delivery of personal chattels.

And the rule is not different though the purchase money has been advanced by the vendee, where the suit is on the contract itself and not grounded on a rescision of the contract.

In the latter case the plaintiff may recover back the purchase money. advanced, in a count for money had and received.

But if the vendee elects to rescind the contract, his resort on the guaranty given by the vendor is gone; and therefore a suit against the guarantor must necessarily be founded on the affirmance of the contract of sale.

ERROR to the District Court for the city and county of *Philadelphia.*

This was an action on the case, brought by Thomas L. Woolston against Robert Smethurst, on a guaranty in writing given on the 29th of July 1839 by the defendant to the plaintiff for the performance of a contract dated July 24th 1839, made by John Bosler with the plaintiff, to deliver to the latter at any time after the 1st of October 1839, on five days' notice, for value received, 13,000 morus multicaulis trees.

. On the trial, the plaintiff, after giving in evidence the article of sale and guaranty, offered to prove the price paid by him to Bosler for the trees, and that the defendant had been informed of this price at the time of the sale and guaranty. To this evidence the defendant objected, but the court admitted it and the defendant excepted.

The plaintiff showed receipts dated the 24th of July 1839, given by Bosler to him for $1058.33, and for two notes of hand by plaintiff in favour of Bosler, each for the same sum, and the notes.

The plaintiff then called a witness who stated that in July 1839 Bosler and the plaintiff came to his office, and a conversation took place about the trees and other matters. The defendant objected to the evidence of any conversations with him prior to the date of the contract and guaranty, but the court overruled the objection and admitted the evidence.

The plaintiff offered Bosler as a witness, but the defendant objected on the ground of his being the party whose contract was guaranteed; but the court admitted him and the defendant objected.

The defendant then offered to show the value of morus multicaulis trees at the time of the breach of the contract. The plaintiff

[Smethurst v. Woolston.]

objected; the court rejected the evidence and the defendant ex
cepted.

The court charged the jury as follows:

This is an action brought on a guaranty given by the defendant
to the plaintiff for the performance of a contract, made by John
Bosler with the plaintiff, dated July 24, 1839, for the delivery of
13,000 multicaulis trees. It appears that the trees were sold and
paid for at the date of the contract. Smethurst, by his guaranty,
undertook for the faithful performance of the agreement on the
part of Bosler. Smethurst had a right to inquire, and must be
presumed to have known what was the value paid for the trees to
Bosler. He was becoming security for Bosler, who acknowledged
in the contract to have received value, and it was Smethurst's
duty to inquire what that value was. That value furnishes the
measure of damages. It turns out that Bosler had received $3000.
The trees were not delivered: five days' notice was given to Bos-
ler and Smethurst. The law is clear that Smethurst is liable for
the amount paid to Bosler.

The defendant requested the court to charge on the following
points:

1. That the defendant is liable for the value of the trees at the
time of the breach of contract, or since that time. Answer: The
defendant is liable for the price paid by Woolston to Bosler. It
was of no consequence to Woolston what the price was five days
after the notice given. The money or the trees should have been
tendered by the defendant to the plaintiff on the breach of the
contract by Bosler: he has not proved any such tender.

2. That notice should have been given by the plaintiff to the
defendant on the breach of contract by Bosler. Answer: The
correspondence between the parties prevents any difficulty on this
point. Smethurst, by his letter of October 31, 1839, assumed the
matter of the delivery as his own affair. Further notice was not
necessary.

3. That the notice by the plaintiff to Bosler was defective in
not stating any place where the trees were to be delivered. An-
swer: There was no defect in the notice in the particular men-
tioned.

4. That the measure of damages is the value of morus multi-
caulis mulberry trees at the time of the breach of contract, or since
that time. Answer: The measure of damages is the value paid
for the trees by the plaintiff to Bosler.

The defendant excepted to the charge.

Errors assigned:

1. The court erred in permitting evidence to be given by the
plaintiff of the price paid by him to Bosler for the morus multi-
caulis trees, which formed the subject-matter of the contract
guaranteed by Smethurst.

2. In admitting Bosler as a witness on the part of the plaintiff,

[Smethurst v. Woolston.]

Bosler having been incompetent, as the party whose contract was guaranteed and objected to on the part of the defendant, and not released by him.

3. In not permitting the defendant to give evidence of the value of multicaulis trees at the time of the breach of contract, or since that time.

4. In charging the jury that the defendant was bound to ascertain the price paid by the plaintiff for the trees sold by Bosler to plaintiff, and that they were to presume that the defendant had made inquiry in relation to said price.

5. In charging that the defendant was liable for the amount paid by the plaintiff to Bosler for the trees, the delivery of which was guaranteed by the defendant, and that the measure of damages was the amount so paid to Bosler by the plaintiff.

6. In charging that to enable the defendant to give evidence of the value of the trees on the day of the breach of contract, the defendant was bound to prove a tender of the trees, or their value in money at that time to the plaintiff.

7. In charging that the plaintiff was not bound to give the defendant notice of the breach of contract on the part of Bosler, on the ground of the defendant having assumed the matter of the delivery of the trees as his own, there being no evidence to justify such charge.

8. In charging that the notice given by the plaintiff to Bosler to deliver the trees according to the contract guaranteed by the defendant, was sufficient in law, said notice omitting to specify any place for the delivery of the trees.

9. In refusing to charge that the measure of damages was the value of multicaulis trees at the time of the breach of contract, or since.

*Lex* and *Meredith*, for plaintiff in error, contended that it was settled in *Meason* v. *Philips*, (*Add.* 346), and recognised in *Edgar* v. *Boies*, (11 *S. & R.* 445), that the measure of damages in an action on a contract is the value of the articles at the time they are to be delivered; and for the same principle they cited 6 *Wheat.* 109 : 8 *Taunt.* 540 ; 2 *Barn. & Cress.* 624 ; 1 *Yeates* 37 ; 3 *Cranch* 298 ; 10 *Watts* 418 ; 6 *Watts* 304.

*Randall*, contra.

The rule contended for applies in ordinary cases; but where the purchase money has been paid or a consideration advanced by the purchaser, there can be no better measure of damages than that, and it is therefore to be adopted, whether the action be in assumpsit for money had and received, to recover back the advance, or an action on the case founded on the special contract, to recover damages for the loss sustained by the refusal or neglect of the vendor to carry the contract into effect. *Rosc. Ev.* 139 ; 1 *B. & P.*

706; *Sugd. Vend.* 233; 2 *Stark Ev.* 867; 2 *Saund. Pl. & Ev.* 509, 907, 911; 2 *Watts* 433; 10 *Watts* 510. The exception to the general rule is distinctly recognised by C. J. MARSHALL in *Shepherd* v. *Hampton*, (3 *Wheat.* 204). If the justice of the case requires this, the form of suit ought not to make a difference, where it is owing to the default of the vendor, who by his own act has rescinded the contract. The surety stands in the place of the principal, and the same rule applies.

The opinion of the Court was delivered by

ROGERS, J.—The value of the article, at or about the time it is to be delivered, is the measure of damages in a suit by the vendee against the vendor, for a breach of the contract. This principle is ruled in *Meason* v. *Philips*, (*Addison* 346); is recognised in *Edgar* v. *Boies*, (11 *S. & R.* 452); and is, in effect, affirmed by all the authorities cited. Indeed, the general principle is not denied, but it is contended that this is an exception; that the rule holds good only when the purchase money has not been paid; but that when the purchase money has been advanced by the vendee, the measure of damages is the sum paid, or the value of the article which forms the consideration of the contract. But, for this distinction, no authority has been cited except a *dictum* (doubtless entitled to great respect) of Chief Justice MARSHALL, in *Shepherd* v. *Hampton*, (3 *Wheat.* 204). After affirming the general principle, he adds, "for myself only I can say, that I should not think the rule would apply to a case where advances of money had been made by the purchaser under a contract; but I am not aware what would be the opinion of the court in such a case." Taking the remarks of the Chief Justice in the broadest sense, and supposing them to be directly applicable to the case in hand, (of which there is some room to doubt), it is very evident that he failed to advert to the difference between a suit on the contract itself, and a suit grounded on the recision of the contract. But this distinction, which pervades all the authorities, governs the whole case; for the purchaser may declare specially for the breach of the contract, or simply for money had and received, to recover back the deposit, if any be made, or the purchase money if it be paid; or he may join both causes of action in the same declaration. And when this is done, it is granted that, under the money count, the money advanced may be recovered back; or where a specific article has been given in satisfaction, the purchaser may, when default is made, elect to consider the contract at an end, and recover the article itself, or its value, from the vendor. But, on the other hand, where the purchaser declares specially for breach of the contract, and thereby affirms it, the only rule of damages is the value of the article at or about the time it is to be delivered. The point we are now considering is virtually decided in 1 *Dyer* 82, *b.* The case was this: One is to pay at such a day five quarters of wheat; at the day of

[Smethurst .v. Woolston.]

the contract they were worth fifty pounds, at the day of payment five pounds. ' The judgment shall be that he recover five quarters of wheat, or five pounds. And the defendant may deliver the wheat, if he pleases; but the sum of money ought of necessity to be referred to the day; for if the twenty pounds are to be paid, they cannot be paid but as they are at the time, for money is its own measure; otherwise it is of corn. Although it is not expressly said, yet it is evident from the report of the case, that the money had been paid, or other satisfaction made, for the wheat by the vendee; yet it did not occur to the court, or any other person, that this altered the rule of damages. Where the vendor fails to deliver the article bought, the purchaser may elect to rescind the contract and recover back the money paid, or he may bring suit on the agreement, and recover the value at or about the time it ought to have been delivered. And this is a just rule; for if it has risen in value, he has the advantage of the increased price; if it has decreased, why should he, when he adheres to the contract, recover .more from the vendor than for the injury he has sustained by the non-performance of the agreement? And the vendee has the less reason to complain, because he may, as before stated, rescind the bargain, and place himself in the same situation as before it was made. It is said that the vendor is, in the case supposed, in default; and this is true; but where there is any circumstance of aggravation, (which is rarely the case), the jury may do justice by a liberal estimate of the value of the goods. It has been suggested that the contract, on failure of the vendor to perform his part of it, is *ipso facto* rescinded; but this is a novel idea, for it can be rescinded only with the assent of the vendee, who may, in a given case, elect to consider the agreement at an end. And in the latter case, that is, where the purchaser agrees that the contract be rescinded, the remedy against the guarantor is gone; for it is only on the footing of subsistence of the contract between the vendor and vendee, which he guarantees, that he is liable. This is so plain, as not to need the aid of argument. It is very true that a deposit, or even the interest on a deposit, may in certain cases be recovered on a special count against the vendor. But these cases form rather the exception than the rule. Usually, the damages sustained are much less than the deposit; and besides, this is necessary, for otherwise it could not be recovered at all against the vendor, who has not received the money—the deposit being in the hands of the auctioneer, and he alone is liable for money had and received. Besides, the cases cited are on sales of lands by auctioneers, and the same rules cannot hold as on the sale of chattels; for lands, unlike stocks, &c., have no market value. There is nothing in the suggestion that the agreement takes the case out of the general rule. The suit is brought for breach of an agreement, the performance of which the defendant agreed to guarantee. It is, therefore, from necessity, a suit in affirmance of the contract.

[Smethurst v. Woolston.]

The defendant agrees, in effect, that if the vendor fails to perform the agreement, he will pay the value of the trees at the time they ought to have been delivered.

Judgment reversed, and a *venire de novo* awarded.