Moxey et al. *v.* Goldstein, Appellant.

Argued October 10, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*Samuel A. Goldberg,* and with him *Wolf, Block and Schorr & Solis-Cohen,* for appellant.

*J. W. McWilliams,* and with him *C. B. Wagoner* and *C. S. Wesley,* for appellee.

Opinion by Gawthrop, J., December 27, 1930:

Plaintiff sued William Goldstein, L. Goldstein and A. Goldstein individually and as co-partners, trading as William Goldstein Company, to recover $650 alleged to be due them from defendants for their services as

accountants. Prior to the trial of this case separate judgments were entered against L. Goldstein and A. Goldstein for·want of an affidavit of defense. The statement of claim averred "that on or about May 25, 1927, the defendants, through their duly authorized agents and attorneys, Morris Wolf, Esq., and Harry Shapiro, Esq., orally agreed to employ the plaintiffs to prepare a certain accounting statement ...... and the plaintiffs orally agreed to perform said work and prepare said accounting; that plaintiffs performed the work and the defendants accepted and approved it and failed to pay for it. The defendant William Goldstein filed an affidavit of defense, in which he denied that Shapiro was at any time his attorney or agent, or the attorney or agent for the partnership of William Goldstein Company, or that he ever agreed to employ the plaintiffs for or on behalf of William Goldstein or the partnership. He further denied that Wolf agreed to employ the plaintiffs as alleged in the statement of claim, averred that the partnership ended prior to March 17, 1925, and denied that he ever accepted or approved the work. He averred further that the work was done at the instance and on behalf of L. Goldstein and A. Goldstein as individuals, either at their own request or at the request of their attorney Shapiro. At the trial the court permitted counsel for plaintiff to amend the statement of claim in two respects, first, by striking out of the caption "William Goldstein, L. Goldstein and A. Goldstein, making it read co-partners trading as William Goldstein Company," and leaving as defendants the three Goldsteins "individually;" and second, by adding an averment that "William Goldstein on or about May 27, 1927, orally promised and agreed to pay the plaintiffs for their services as aforesaid." The trial before a judge of the municipal court, without a jury, resulted in a

finding for plaintiffs against William Goldstein, who brings this appeal.

Appellees' suit is predicated upon an oral contract of employment alleged to have been made by them with Wolf, appellant's attorney, in certain litigation between appellant and his two brothers; and upon appellant's promise to pay appellees for their services, made after part of the work had been done. It was admitted that at the time the alleged contract was made there was litigation between appellant and his two brothers in the court of common pleas of Philadelphia County, in which Wolf represented appellant and Shapiro represented the two brothers. Appellees undertook to prove the contract by the testimony of one of their number, Joseph S. Schmidt, and certain letters to which reference will be made. Schmidt testified that as a result of a conversation which he had with Shapiro he received from Shapiro a copy of a letter addressed by Shapiro to Wolf, the material part of the letter being as follows:

"Re: Goldstein v. Goldstein. 7643.
Dear Mr. Wolf:

In accordance with our conversation this morning, I have communicated to Edward P. Moxey Company, the accountants, the fact that we have agreed on their appointment as accountants and that they are to concern themselves primarily and immediately with the preparation of an account showing the amount invested on the original purchase, the amounts received from refinancing, and the costs expended or the obligations incurred in the ownership of the following properties ......

After these figures have been prepared, we will then take up the question of an accounting in connection with the profits earned by the William Goldstein Company in its commission, insurance and mortgage loan

business, which includes a half interest in the business of Harry G. Drescher, Inc.

Very truly yours,
Harry Shapiro.''

He testified that on receipt of this letter he went to the office of William Goldstein Company and met appellant's secretary, Miss Krouse, and requested access to the books for the purpose of preparing the statement referred to in the letter mentioned above; that she stated that she had no knowledge of any such arrangement whereby appellees were to make an examination of the books, and ''denied us access to them;'' that he then told her about the letter above mentioned, and stated that he understood that the matter had been arranged, and asked her to get in touch with Wolf; that later in the day he was called on the telephone by Wolf, who told him that Miss Krouse ''had communicated with him and he wanted to know about this arrangement;'' that he read the letter to Wolf over the telephone and Wolf said he would call Miss Krouse and tell her to permit plaintiffs to proceed with the work outlined; that as a result of his conversation with Wolf he went back to appellant's office on May 26, 1927, and started the work; that on June 17, 1927, after the work was completed, appellees addressed and sent to both Shapiro and Wolf a letter and a copy of the account made up from the books of Goldstein Company. The material part of this letter was: ''Pursuant to agreement between yourselves as attorneys for the respective parties in the matter of Goldstein v. Goldstein, we have made an investigation of the books, accounts and records,'' etc. He testified further that shortly thereafter he was present at a conference held between Wolf and Shapiro in the office of the former; that the report was discussed in detail and he was instructed to submit a supplemental report, and that such a report was submitted to both

attorneys on June 17, 1927; that immediately after starting this work in appellant's office he had a conversation with him, which he described as follows:

"A. We were proceeding with our work as outlined in that letter in Mr. Goldstein's office, when he asked me as to the progress of the work, I told him we were getting along as well as could be expected, but that under the procedure as outlined in that letter, it was an awkward way to get at it. He said he was anxious to have the whole thing cleaned up as soon as possible and get this report in, and get the thing out of the road. I said, 'You are not doing it in the most efficient manner, but we are proceeding as agreed and outlined in this letter,' but I said, 'I can't do it on your say-so, because you are not employing us.' 'Well,' he said, 'You go ahead and proceed the way you have outlined so it will be done in the quickest way possible, and I will see that you get paid.'"

"Q. When you said to him, 'You are not employing us,' what were you referring to?

A. That he, individually, was not employing us.

Q. You meant you were employed by whom?

A. Both attorneys.

Q. Representing their respective clients?

A. Yes, sir."

The court permitted appellees to introduce in evidence, over appellant's objection, the letter of May 25, 1927, from Shapiro to Wolf, and also three letters from appellees to Wolf, dated February 14, 1928, February 17, 1928, and March 5, 1928, respectively, demanding payment for their work.

Appellant testified that he did not say to Schmidt: "I will see that you get paid." It was admitted by the defendant at the trial that the work done by appellees was worth the amount for which the suit was brought.

Appellant's first proposition is that it was error to

admit in evidence the letter of May 25, 1927, because it was hearsay evidence. This contention seems to indicate a misunderstanding of the effect of the letter and the purpose for which it was offered. The manifest purpose of offering it was to prove that when Wolf talked with Schmidt over the telephone he was informed that Shapiro had told appellees that he (Shapiro) and Wolf had agreed on appellees' appointment as accountants in connection with litigation which was pending between their clients, and also to prove that appellees understood, before they began the work, that Wolf and Shapiro had authorized them to do it. We have no doubt as to the competency and relevancy of the letter for these purposes. When considered with the other evidence subsequently introduced it had an important bearing on the question whether or not there was an oral contract between plaintiffs and defendant.

The next proposition advanced in behalf of appellant is that this letter does not establish a contract between the appellees and appellant. We agree. But appellees do not contend that the letter constitutes a written contract. Their contention is, and was in the court below, that the actions of appellant's counsel, subsequent to his being informed by appellees as to the contents of this letter, warranted a finding of fact that there was an implied promise by Wolf on behalf of appellant to pay for the work which he knew appellees were about to do, and that when the work was done appellant became jointly liable, with his two brothers, for the full amount of the claim. The court below adopted that view. We think that the evidence warranted such a finding. The authority of an attorney to bind his client for expenses such as are involved in this case is not open to question.

The next contention of appellant is that it was error to permit appellees to introduce three letters written

by them to Wolf demanding payment, and stating, inter alia, that the work was "jointly authorized by Harry Shapiro, Esq., and yourself for the benefit of your respective clients;" and suggesting that appellees' original engagement was predicated upon the letter of May 25, 1927. These letters merely demanded payment and stated appellees' understanding of the contract. Proof of demand of payment is always admissible. The suggestion that the letters are inadmissible, because they contained self-serving declarations does not appeal to us. What parties say to each other about a subject of dispute is always evidence if a suit grow out of it: Crossgrove v. Himelrich, 54 Pa. 203. See also Glatfelter v. Mendels, 46 Pa. Superior Ct. 562, in which Judge BEAVER, speaking for the court of a similar contention, said: "Surely if a demand had been made verbally and a conversation had ensued between the plaintiff and the defendants relating to the subject matter of the demand, there can be no question but that it would have been competent and relevant."

It is urged that error was committed in refusing to strike out the testimony of Schmidt that appellant said to him while the work was being done, "I will see that you get paid." The contention is that the testimony was inadmissible, because it amounted to an oral promise to pay the debt of another and therefore, under the statute of frauds, was ineffective. We deem it unnecessary to consider this matter because the opinion of the judge, trying without a jury, shows that nothing was predicated upon this alleged promise.

The judgment is affirmed.